IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMB-TOTTI ALASSANI | : | CIVIL ACTION |
| | : | NO. 10-4491 |
| v. | : | |
| | : | |
| MARY-ELLEN WALTER, et al. | : | |

O'NEILL, J.                                                                                   JANUARY 14, 2010

## MEMORANDUM

Plaintiff Damb-Totti Alassani alleges in this lawsuit that defendants Mary-Ellen Walter, Kathleen Shields, John P. Delaney, the city of Philadelphia and two unidentified Immigration and Customs Enforcement officials violated his rights under the Fourth and Fifth Amendments to the United States Constitution. Defendants Walter and Shields have filed motions to dismiss the claims against them. Additionally, Walter has filed an alternative motion for summary judgment.[1] Presently before me are the motions to dismiss, Walter's alternative motion for summary judgment, plaintiff's response to each motion and replies by both defendants. For the reasons that follow, I will grant in part and deny in part Shields's motion and I will deny Walter's motions.

## BACKGROUND

Plaintiff, a citizen of Togo, presently resides in Philadelphia, Pennsylvania. He alleges that he was arrested without probable cause because defendants mistook him for another individual, Andre Smith.

On August 6, 2008, police arrested plaintiff for failing to satisfy the terms of a sentence he was serving for driving under the influence of alcohol. Compl. ¶ 11. Approximately three

---

[1] On November 22, 2010, defendants Delaney and the City of Philadelphia filed an answer to the complaint. Doc. No. 14.

hours after plaintiff's arrest, Andre Smith was arrested for violating the Pennsylvania Uniform Firearms Act ("VUFA"), 18 Pa. Cons. Stat. Ann. §§ 6101 et seq. Id. at 12. The arrests of both plaintiff and Smith were processed through the same police department. Id.

Immigration and Customs Enforcement ("ICE") initiated removal proceedings against plaintiff. Walter Decl. ¶ 2. On August 28, 2008, he attended an immigration hearing during which herein-unidentified "immigration officials" "accused [him] of [] being Andre Smith." Compl. ¶ 15. Plaintiff's attorney, however, was able to convince the immigration officials that "[plaintiff] was not Andre Smith." Id. at 16.

Plaintiff appeared again in immigration court on September 1, 2009. Walter Decl. ¶ 2. This time, the government was represented by defendant Walter, an Assistant Chief Counsel for the Department of Homeland Security, who had reviewed the contents of plaintiff's "alien file" prior to the hearing. Id. at ¶ 1; Compl. ¶¶ 2, 8. Plaintiff's alien file included an I-213 Record of Deportable/Inadmissible Alien and a National Crime Information Center report. Walter Decl. ¶ 4. Both reports indicated that plaintiff had been arrested twice in Pennsylvania–once for DUI and once for VUFA. Id. at ¶¶ 5-7. The DUI arrest was under the name Alassani but the VUFA arrest was under the name Andre Smith, which both reports identified as an alias used by Alassani. Id. at ¶ 7.

At the September 1, 2009 hearing, plaintiff denied under oath that he had been arrested for VUFA. Id. at ¶ 8. At plaintiff's attorney's request, the immigration court adjourned the hearing until October 20, 2009 to permit the parties to investigate the discrepancy between plaintiff's testimony and the information contained in the reports. Id. at ¶ 8. Walter asserts that during the adjournment, she took three steps in attempting to confirm that both the DUI arrest

and the VUFA arrest were attributable to plaintiff. First, she "accessed the Philadelphia Preliminary Arraignment System on ICE's Detention and Removal Operations area computer . . . and queried the Philadelphia district control number for the VUFA arrest." Id. at ¶ 9. The arrest report produced by the query indicated that "'Andre Smith' had been arrested on a VUFA charge [and that] the state identification number for the person arrested [was] 33038909." Id. at ¶ 9. Second, she obtained the arrest photographs associated with the DUI arrest and the VUFA arrest. Id. at ¶ 10. Both arrest photographs indicated that the state identification number of the individual in the photograph was 33038909. Id. at ¶ 11. Walter asserts that "[t]he two photos appear to me to show the same person, and appear to show the person I examined in immigration court known to me as Damb-Toti Alassani, alias 'Andre Smith.'" Id. at ¶ 11. Finally, she requested confirmation from the Philadelphia Police Department's Identification Unit that the fingerprints on file for the VUFA arrest match those on file for state identification number 33038909. Id. at ¶ 12. An Identification Unit officer informed Walter that the fingerprints matched. Id.

After satisfying herself that both the DUI arrest and the VUFA arrest were attributable to plaintiff, Walter "accessed the Pennsylvania Unified Judicial System web portal and queried [the] Philadelphia district control number for the VUFA arrest." Id. at ¶ 13. Philadelphia court records revealed that the defendant charged with VUFA had failed to appear in court and therefore a bench warrant had been issued for his arrest. Id. Walters informed ICE Detention and Removal Officers that plaintiff was scheduled to appear in immigration court on October 20, 2009 and that there had been a bench warrant issued for his arrest. Id. at ¶ 13. She requested that the officers attend the hearing. Id. at ¶ 16.

3

At the hearing on October 20, 2009, Walter asserts that plaintiff renewed his request for voluntary removal but "presented no evidence to the Immigration Judge establishing that he was not the individual arrested on the VUFA charge, other than his unsubstantiated testimony." Id. at ¶ 15. She thus requested that the ICE officers detain plaintiff and "deliver him to the appropriate law enforcement officers." Id. at ¶ 16. The officers took plaintiff to the Philadelphia District Attorney's office to be fingerprinted. Id. Walter later learned that the fingerprints taken that day matched those on file for state identification number 33038909. Id.

After being fingerprinted, plaintiff alleges that two unidentified immigration officers placed him in custody at the Curran-Fromhold Correctional Facility in Philadelphia. Compl. ¶ 21. Despite plaintiff's repeated assertion that he was not Andre Smith, the prison guards did not report his claim to prison warden defendant John P. Delaney. Id. at ¶ 23. Plaintiff remained incarcerated until January 14, 2010, when plaintiff's attorney allegedly secured his release by convincing an unidentified judge that "Andre Smith was at a preliminary hearing in Philly at the same time [plaintiff] was serving his sentence in the Delaware County jail." Id. at ¶ 25.

STANDARD OF REVIEW

I. Motion To Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual

4

allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11 (quoting Iqbal, 129 S. Ct. at 1950). The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

5

II.     Motion for Summary Judgment

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact

6

should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

I.  Kathleen Shields

Shields argues that the complaint against her should be dismissed for two reasons. First, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Second, because she is entitled to absolute prosecutorial immunity for her alleged actions in this case. She also argues that plaintiff's claims against her in her official capacity must be dismissed because the District Attorney's office is not a suable entity for the purposes of section 1983. I will discuss each argument in turn.

    A.    Failure to State A Claim Upon Which Relief Can Be Granted

In order to state a claim under section 1983, plaintiff must allege "both a deprivation of a federally protected right and that this deprivation was committed by one acting under the color of state law." Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997). There is no dispute that plaintiff has adequately alleged that Shields acted under the color of state law.

Shields argues, however, that plaintiff has not alleged the deprivation of a federally protected right. "The Fourth Amendment prohibits arrest without probable cause." Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). Thus, in order to state a claim that his Fourth Amendment rights were violated, plaintiff must allege that Shields caused him to be arrested without probable cause. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). His complaint is sufficient in this respect. Plaintiff alleges that Shields violated his constitutional

7

rights in three ways: (1) by "causing [plaintiff] to be arrested and incarcerated without probable cause;" (2) by "failing to investigate [plaintiff's] assertions that he was not Andre Smith;" and (3) by "causing [plaintiff] to be arrested and incarcerated because of her deliberate indifference to the protestations of [plaintiff] and his attorney and the likelihood that [plaintiff] was not Andre Smith." Compl. ¶¶ 36(a)-(b).[2] Plaintiff's complaint, in its essence, alleges that Shields caused him to be arrested pursuant to a warrant that she knew had been issued for someone else–specifically Andre Smith.[3] "A Fourth Amendment violation may be demonstrated if the officers executing the warrant knew they were arresting the wrong person or acted in reckless disregard of facts that would have led to the conclusion that they arrested the wrong person." McHenry v. Cnty. of Delaware, No. 04-1011, 2005 WL 2789182, at *5 (E.D. Pa. Oct. 24, 2005). The key question in mistaken identity cases is "whether the arrest of the wrong person was reasonable under the totality of the circumstances." Id. If plaintiff's allegations are true, his arrest may have been unreasonable under the totality of the circumstances.[4] I will therefore deny Shields's motion to dismiss for failure to state a claim upon which relief can be granted.

---

[2] Paragraph 36 of plaintiff's complaint has three subsections. The first two are designated "b." For the purpose of clarity, I will refer to the first subsection of paragraph 36 as subsection "a."

[3] No party has provided a copy of the arrest warrant pursuant to which plaintiff was arrested.

[4] I note that plaintiff's allegations with respect to his claims against Shields are just barely sufficient to satisfy the requirements of Twombly.

8

B.     Absolute Immunity

Shields argues that she is entitled to absolute prosecutorial immunity for her actions in this case. Absolute immunity is "[m]ore than a mere defense to liability, [it instead] embodies the right not to stand trial." Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008). The question of whether a defendant is entitled to absolute immunity is therefore appropriately raised in a motion to dismiss. See id.

Prosecutors are entitled to absolute immunity for "actions performed in a quasi-judicial role." Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992) (internal citations omitted), citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976). This includes actions taken in-court as well as "selected out-of-court behavior 'intimately associated with the judicial phases' of litigation." Id., citing Imbler, 424 U.S. at 430. On the other hand, a prosecutor's investigative or administrative actions are protected only by qualified immunity. Id. At the outset, then, I must determine whether Shields's allegedly unconstitutional actions were "intimately associated with the judicial phases of litigation," see Kulwicki, 969 F.2d at 1463, or merely investigative or administrative in nature.

To distinguish between actions intimately associated with the judicial phase of litigation and actions that are investigative or administrative in nature, courts apply a "functional approach, which looks to the nature of the function performed not the identity of the actor who performed it." See Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (internal citations and quotation marks omitted). The Supreme Court has held that actions such as giving advice to police during a criminal investigation, see Burns v. Reed, 500 U.S. 478, 495-96 (1991), making statements to the press, see Buckley v. Fitzsimmons, 509 U.S. 259, 277 (1993), and acting as a complaining

9

witness in support of a warrant application, see Kalina v. Fletcher, 522 U.S. 118, 129 (1997), are investigative or administrative in nature. In addition, the Court of Appeals has recognized that selling property forfeited by a criminal defendant, see Giuffre v. Bissell, 31 F.3d 1241, 1253 (3d Cir. 1994), and negotiating and authorizing a "transaction whereby [the criminal defendant] escaped prosecution for serious drug offenses," see id., are actions that are investigative or administrative in nature.

On the other hand, the Supreme Court has held that a prosecutor is absolutely immune from liability for her decision to initiate a criminal prosecution, see Kalina v. Fletcher, 522 U.S. 118, 129 (1997), accord Kulwicki, 969 F.2d at 1463 ("The decision to initiate a prosecution is at the core or a prosecutor's judicial role."), and for her decision to seek an arrest warrant, see Kalina, 522 U.S. at 129. Moreover, courts have held that a prosecutor's involvement "in either directing or approving [an individual's] arrest following the filing of the charges" is intimately related to the judicial phase of the litigation, and thus entitled to absolute immunity. Hudak v. Foulk, No. 06-110, 2007 WL 4287760, at *10 (W.D. Pa. Dec. 5, 2007); see also Orobono v. Koch, 30 F. Supp. 2d 840, 842 (E.D. Pa. 1998) ("Arresting a suspect is a necessary step in the initiation of a criminal prosecution. As a result, it can hardly be separated from the core functions of a prosecutor.").

At this stage in the proceedings, it is impossible to determine whether Shields was acting in a quasi-judicial role or in an investigative role when she allegedly caused plaintiff to be arrested in violation of his Fourth Amendment rights. The complaint does not specify what actions Shields took in "causing [plaintiff] to be arrested," compl. ¶ 36(a), whether such actions were taken in or out of court or whether at the time of Shields's allegedly unconstitutional

10

actions there had been charges filed against Andre Smith.[5] See Odd, 538 F.3d at 210 (acknowledging that there are no "bright-line rules that [] treat the timing of the prosecutor's action (e.g. pre- or postindictment), or its location ( i.e. in- or out-of-court), as dispositive" but noting that such considerations are "relevant [] to the extent that they bear upon the nature of the function the prosecutor is performing."). Given that Shields bears the "heavy burden" of establishing her right to absolute immunity, see Light v. Haws, 472 F.3d 74, 80-81 (3d Cir. 2007), and that I must presume that "qualified rather than absolute immunity is appropriate," Carter v. City of Phila., 181 F.3d 339, 355 (3d Cir. 2008), I will deny Shields's motion to dismiss on the basis of absolute immunity.[6] See Snavely v. Arnold, No. 08-2165, 2009 WL 1743737, at *8 (M.D. Pa. June 18, 2009) (denying motion to dismiss where the complaint "lack[ed] the detail and specificity" needed to determine whether the defendant was entitled to absolute immunity).

### C. Official Capacity Claims

Plaintiff has filed suit against Shields in both her individual and her official capacity. Shields argues that the suit against her in her official capacity must be dismissed. Shields's Br. at 2. Plaintiff has not responded to this argument. "A suit against a city official named in her official capacity is a suit against the entity she represents." Joobeen v. City of Phila. Police Dept., No. 09-1376, 2010 WL 844587, at *5 (E.D. Pa. Mar. 4, 2010), citing Hafner v. Melo, 502

---

[5] Plaintiff appears to argue that absolute immunity does not apply because "the original prosecution was brought against Andre Smith." Pl.'s Br. at 5. Even accepting arguendo plaintiff's assertion that he is not Andre Smith, that fact alone does not divest Shields of absolute immunity if she is otherwise entitled to it. If she mistakenly caused the wrong person to be arrested but that mistake occurred while she was acting in a quasi-judicial role she would be entitled to absolute immunity from liability for that mistake.

[6] Shields does not argue that she is entitled to qualified immunity.

11

U.S. 21, 27 (1991). "The Philadelphia District Attorney's Office, however, is not a separate legal entity for the purposes of § 1983, and, therefore, cannot be sued under § 1983." Id., citing Reitz v. Cnty. of Bucks, 125 F.3d 139, 148 (3d Cir. 1997). I will thus dismiss plaintiff's claim against Shields in her official capacity.

    II.    Mary-Ellen Walter

Walter argues that the complaint against her should be dismissed or, in the alternative, that I should enter summary judgment in her favor. She offers several reasons in support of her alternative motions. First, she argues that plaintiff's claim under the Fifth Amendment must be dismissed because the allegations in the complaint give rise to a claim only under the Fourth Amendment. Second, she argues that she is entitled to judgment because she had probable cause to arrest plaintiff. Third, she argues that she is entitled to qualified immunity for her actions. Finally, she argues that this Court lacks jurisdiction to decide this case because the United States, which she argues must be substituted as a defendant, is not amenable to Bivens suit and because plaintiff has not exhausted his administrative remedies.

    A.    Jurisdiction

I will first address Walter's jurisdictional argument because it calls into question this Court's power to hear the case. Walter argues that plaintiff did not exhaust his administrative remedies and therefore I must dismiss this case for lack of jurisdiction. As a basis for her argument, Walter relies on the Federal Tort Claims Act's requirement that "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a); see also Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971). The FTCA's

exhaustion requirement, however, is inapplicable here because plaintiff has alleged violations of the Fourth Amendment, for which the FTCA does not provide a remedy. See Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477-78 (1994) (recognizing that the FTCA does not provide redress for constitutional violations); Couden v. Duffy, 446 F.3d 483, 499 (3d Cir. 2006) (same).[7]

Instead, plaintiff's suit is based on Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), in which the Supreme Court "recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights." Lora-Pena v. Fed. Bureau of Investigation, 529 F.3d 503, 505 n.1 (3d Cir. 2008). "[C]onstitutional claims against federal officers are properly brought under Bivens[.]" Id. The Court of Appeals has not squarely addressed whether Bivens actions, outside the context of prisoner civil rights actions,[8] are subject to an exhaustion requirement. I am convinced, however, that they are not.

Congressional intent is the most critical factor in deciding whether exhaustion of administrative remedies is required. See Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 501

---

[7] Because plaintiff does not advance a claim under the FTCA, Walter's motion to substitute the United States Government as a defendant pursuant to 28 U.S.C. § 2679(d)(1) will be denied. See Schrob v. Catterson, 967 F.2d 929, 939 (3d Cir. 1992) ("Even if the district court had granted the motion to substitute and then dismissed these claims (or, alternatively, even if we asserted jurisdiction over this appeal and mandated the same result), the appellants still must go to trial on the Bivens claims . . . ."); Garland v. U.S. Airways, Inc., No. 05-140, 2006 WL 2471551, at *2 n.3 (W.D. Pa. Aug. 24, 2006) ("The United States does not seek to substitute itself as a defendant with respect to the Bivens claim . . . (or any other non-tort claim), nor would such a substitution be permissible.").

[8] With respect to prisoner civil rights lawsuits, 42 U.S.C. § 1997e provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007).

(1982) ("legislative purpose . . . is of paramount importance in the exhaustion context because Congress is vested with the power to prescribe the basic procedural scheme under which claims may be heard in federal courts."). Unlike in civil rights litigation by prisoners where Congress has required exhaustion of administrative remedies as a prerequisite to federal subject matter jurisdiction, 42 U.S.C. § 1997e, Congress has not affirmatively required non-incarcerated individuals to exhaust their administrative remedies prior to bringing a Bivens action for Fourth Amendment violations.

Moreover, other courts have held that there is no exhaustion requirement applicable to Bivens actions. See Hoosier Bancorp of Ind., Inc. v. Rasmussen, 90 F.3d 180, 183 (7th Cir. 1996) ("for suits alleging violations of constitutional protections (i.e., Bivens actions), there is no exhaustion requirement."); accord Esang v. United States Sec'y. of Hous. and Urban Dev., No. 01-5537, 2002 WL 31655215, at *3 (N.D. Ill. Nov. 25, 2002) ("a Bivens action is distinct from a claim under the FTCA and thus is not subject to the FTCA's exhaustion requirements.") (internal citations omitted); cf. Shrob v. Catterson, 967 F.2d 929, 932 (3d Cir. 1992) (noting that the plaintiff filed claims under both the FTCA and Bivens and that "[a]s required by the FTCA, Schrob filed administrative claims with the Department of Justice against Catterson and the DEA agents . . . .") (emphasis added); Izen v. Catalina, 398 F.3d 363, 366-67 (5th Cir. 2005) (dismissing FTCA claim for failure to exhaust while dismissing coextensive Bivens action without mention of failure to exhaust). Indeed, my review of the case law reveals no case in which a Bivens action filed under the circumstances presented by this case has been dismissed for failure to exhaust administrative remedies. Accordingly, assuming that there were administrative remedies available to plaintiff, I find that he was not required to exhaust such

14

remedies prior to seeking review by this Court. I will therefore deny Walter's motion to dismiss for lack of subject matter jurisdiction.

B. Failure to State a Claim Upon Which Relief Can Be Granted

Walter argues that plaintiff's complaint does not contain sufficient factual allegations to satisfy Twombley's plausibility requirement. Walter's Br. at 15-16. As noted supra in my discussion of Shields's motion to dismiss, "[t]he Fourth Amendment prohibits arrest without probable cause." Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). Thus, in order to state a claim that his Fourth Amendment rights were violated, plaintiff must allege that Walter caused him to be arrested without probable cause. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).

Plaintiff's complaint contains adequate factual allegations to state a claim under the Fourth Amendment. The complaint alleges that Walter ordered plaintiff's arrest pursuant to a warrant issued for Andre Smith despite plaintiff's assertion that he was not Andre Smith. Compl. ¶¶ 17-21. The complaint further alleges that plaintiff and his attorney had in the past successfully convinced "immigration officials" that plaintiff was not Andre Smith. Compl. ¶ 16. "A Fourth Amendment violation may be demonstrated if the officers executing the warrant knew they were arresting the wrong person or acted in reckless disregard of facts that would have led to the conclusion that they arrested the wrong person." McHenry, 2005 WL 2789182, at *5. The key question in mistaken identity cases is "whether the arrest of the wrong person was reasonable under the totality of the circumstances." Id. If plaintiff's allegations are true, his arrest may have been unreasonable under the totality of the circumstances. I will accordingly deny Walter's motion to dismiss.

C. Probable Cause

Walter argues that she is entitled to judgment because plaintiff's arrest was supported by probable cause. Walter's Br. at 11-14. The Fourth Amendment prohibits the arrest of an individual "except upon probable cause." Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010), citing Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Blaylock v. City of Phila., 504 F.3d 405, 411 (3d Cir. 2007), citing Orsatti, 71 F.3d at 483. "Generally, the question of probable cause in a section 1983 damage suit is one for the jury." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (internal quotation marks omitted).

Walter has submitted a declaration detailing the facts in her possession at the time she caused plaintiff to be arrested. Plaintiff notes that the parties have not yet exchanged discovery and requests that Walter's motion for summary judgment be denied without prejudice until after such discovery can be taken. The Court of Appeals has held that "[t]he court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." Dowling v. City of Phila., 855 F.2d 136, 139 (3d Cir. 1986). Indeed, in cases "where [relevant] facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." Sames v. Gable, 732 F.2d 49, 51 (3d Cir. 1984), citing Ward v. United States, 471 F.2d 667, 670-71 (3d Cir. 1973). Under the circumstances presented here, plaintiff is entitled to gather his own evidence and test the validity of the assertions in Walter's declaration prior to opposing a motion for summary judgment. I

16

will therefore deny Walter's motion for summary judgment.

D. Qualified Immunity

Walter also argues that she is entitled to qualified immunity.[9] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010), citing Pearson v. Callahan, 555 U.S. 223 (2009). A two-part analysis governs whether a defendant is entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The first question is whether the government official's alleged conduct violated a federal constitutional or statutory right owed to the plaintiff. See Ray, 626 F.3d at 174. The second question is whether the right at issue was "clearly established." Id. "If 'the officer made a reasonable mistake about the legal constraints on [her] actions,' then qualified immunity should protect [her] from suit." Id., quoting Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id., quoting Malley v. Briggs, 475 U.S. 335, 341 (1986). It "applies regardless of whether the government official's conduct result[ed] from a mistake of law, mistake of fact, or mistake based on mixed questions of law and fact." Montanez v. Thompson, 603 F.3d 243, 250 (3d Cir. 2010).

Walter does not argue that the right at issue was not clearly established. Therefore, I will focus on the question of whether plaintiff's Fourth Amendment rights were violated. "The Fourth Amendment does not guarantee that only the guilty will be arrested or detained." Baker v. McKenna, No. 04-1012, 2006 WL 1453119, at *2 (W.D. Pa. May 18, 2006). It simply

---

[9] Walter does not argue that she is entitled to absolute immunity.

prohibits the arrest of an individual "except upon probable cause." Reedy, 615 F.3d at 211. Walter is entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" to arrest plaintiff "in light of clearly established law and the information [Walter] possessed." Blaylock, 504 F.3d at 411, citing Hunter v. Bryant, 502 U.S. 224 (1991). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Id., quoting Orsatti, 71 F.3d at 483.

As noted supra, Walter has submitted a declaration in support of her argument that her conclusion that probable cause existed to arrest plaintiff was reasonable. Plaintiff has not had any opportunity to conduct discovery on the fact intensive question of whether Walter acted reasonably. I will thus deny Walter's motion for summary judgment. See Jean-Pierre v. Bureau of Prisons, No. 09-266, 2010 WL3852338, at *6 (W.D. Pa. July 30, 2010) (finding that the defendant's motion for summary judgment on the basis of qualified immunity should be denied without prejudice to allow the plaintiff reasonable discovery).

## CONCLUSION

I will grant Shields's motion to dismiss the claim against her in her official capacity. In all other respects I will deny Shields's and Walter's motions to dismiss and Walter's motion for summary judgment.[10]

---

[10] I note for the sake of completeness that plaintiff has withdrawn or disavowed several claims, which he will therefore not be permitted to pursue in this action. First, plaintiff has withdrawn his claims against Walter in her official capacity. Pl.'s Br. at 5. Due to the sovereign immunity enjoyed by the United States, "[a] Bivens action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007), cited in Debrew v. Auman, 354 F. App'x 639, *1 (3d Cir. 2009).

After appropriate discovery, both Shields and Walter will be permitted to reassert their immunity arguments. Walter will also be permitted to reassert her argument that plaintiff's arrest was supported by probable cause.

---

Second, plaintiff has withdrawn his Fifth Amendment claims against all defendants. Pl.'s Br. at 5. Therefore, paragraphs 27(c), 30(c), 33(c) and 36(c) of the complaint will be stricken because the "deliberate indifference" allegation contained therein arises, if at all, from the Fifth Amendment. See Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) ("Where a defendant does not intentionally cause the plaintiff to be seized, but is nonetheless responsible for the seizure, it may be that a due process "deliberate indifference" rather than a Fourth Amendment analysis is appropriate.").

Third, plaintiff has disavowed any intention to pursue a conspiracy claim against any defendant. Pl.'s Br. at 5.